IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA


| | | |
|---|---|---|
| Altony Brooks, #313000, | ) | CIVIL ACTION NO. 9:15-3107-PMD-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Sgt. Davenport, Captain Pack, Lt. Carter, | ) | |
| Ofc. Johnson, Major S. Sutton, Ofc. Cox, | ) | |
| Ofc. Ledwell, Jane Doe, Director John Doe, | ) | |
| Warden Stevenson, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. [1]

Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations

of his constitutional rights by the named Defendants.  Plaintiff also appears to assert a claim under

the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, et. seq.,

as well as some state law claims.

The Defendants filed a motion for summary judgment pursuant to Rule 56,

Fed.R.Civ.P., on May 10, 2016.  As the Plaintiff is proceeding pro se, a Roseboro order was entered

by the Court on May 11, 2016, advising Plaintiff of the importance of a dispositive motion and of the

---

[1]42 U.S.C. § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method
for vindicating federal rights elsewhere conferred.'"  Albright v. Oliver, 510 U.S. 266, 271 (1994)
(quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).  A civil action under § 1983 allows "a
party who has been deprived of a federal right under the color of state law to seek relief."  City of
Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707 (1999).



need for him to file an adequate response. Plaintiff was specifically advised that if he failed to

respond adequately, the Defendants' motion may be granted, thereby ending his case. Plaintiff

thereafter filed a response in opposition to the Defendants' motion on June 16, 2016, as well as an

"Affidavit" in opposition to summary judgment, with attachments, on July 25, 2016.

The Defendants' motion is now before the Court for disposition.[2]

### Background and Evidence

Plaintiff alleges in his verified Complaint[3] that on November 28, 2012, after being

issued a tray of food by the Defendant Davenport (a Sergeant), he informed Davenport that "officers"

had threatened to do something to his food in response to Plaintiff laughing about the Defendant Cox

(another correctional officer) having been "dashed" with urine and fecal matter by another inmate.

Plaintiff alleges that the Defendant Ledwell (a corrections officer) was the one who had said he would

place something in his food. Plaintiff alleges he told Davenport that he did not "trust the tray", but

that Davenport indicated he was not going to give Plaintiff another tray. Plaintiff alleges that he then

"snatched the tray from the food flap and threw it in [his] room". Plaintiff alleges that Davenport

then grabbed his arm, pulling it through the food flap ("scraping" his arm in the process), and then

held Plaintiff's arm "while spraying chemical munitions in [his] room". Plaintiff alleges he placed

his body on the food flap so Davenport could not spray into the room, while asking Davenport why

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3]In this Circuit, verified complaints by pro se litigants are considered as affidavits with respect to any factual allegations contained therein that are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).



he was holding Plaintiff's arm and spraying into his room. Plaintiff alleges that Davenport told Plaintiff to give him the tray and that he would not gas the Plaintiff if he would just give Davenport the tray, so Plaintiff gave him the tray.

Plaintiff alleges that Davenport "had no reason to use excessive use of force and assault [him] with gas or by bruising [his] wrist". Plaintiff alleges that he was behind a locked door in his room posing no threat. Plaintiff also alleges that he was refused medical treatment and a shower following this incident because (Carter said) there was water in his cell (a sink) that he could use to wash off. However, Plaintiff alleges he had "no soap[,] towel, toilet paper or rags". Plaintiff further alleges that as a result of this incident he was "ultimately placed on nutriloaf and stripped of all [his] clothing", and that he was left in his cell with no clothing or blanket for three days. Plaintiff alleges that his cell was "freezing" and that he suffered anxiety, fears, paranoia, restlessness, confusion and stress about his situation. Plaintiff alleges that the Defendant Major Sutton was the one who placed him on nutriloaf "for snatching [his] tray" while the Defendants Carter (a Lieutenant) and Pack (a Captain) were the ones who ordered him placed in a cell with "no legal material or clothes and no blanket". Plaintiff alleges that he was "refused a copy of the nutriloaf documentation", and that Pack and Carter "did not investigate the matter".

Plaintiff alleges that when he was taken out of his room the nurse was doing her rounds on lockup and Davenport asked him if he needed to see the nurse, and that although he said "yes", he was reluctant to speak to the nurse because Carter had ordered the Defendants Johnson and Cox (correctional officers) to strip him when he came out of the cell. Plaintiff alleges the nurse then left, but subsequently came back and saw the Plaintiff outside of his cell and "said she did not see anything wrong with [him]".



Plaintiff alleges that the Defendants were deliberately indifferent to his medical needs, were negligent in the carrying out of their job responsibilities, and breached their duty of care, all in violation of the South Carolina Tort Claims Act. Plaintiff alleges he filed a Step 1 grievance on December 4, 2012, that his grievance was sent to the Division of Investigations on December 21, 2012, and that he received a final agency response on August 8, 2013[4] stating that his grievance had been dismissed due to Plaintiff's failure to participate in the grievance process. However, Plaintiff alleges that he had been transferred to the Lee Correctional Institution (LCI) in March 2013,[5] and that he never failed to participate in the grievance process.

Plaintiff asserts claims for assault and battery (presumably under state law), excessive use of force (federal constitutional claim), outrage (a state claim), conspiracy (federal constitutional claim), and negligence (a state law claim). Plaintiff also alleges that he is an "Aboriginal Black Orthodox Christian", and asserts a claim under the RLUIPA claiming that "being gassed" prevented him from making his daily prayers and meditations, and that being stripped "before others" without his consent violated his "sense of morality and religious rights of his modesty". Plaintiff seek declaratory and/or injunctive relief, as well as monetary damages.

Plaintiff has attached to his Complaint a copy of a Step 1 grievance (BRCI-1500-12) concerning the incident of November 28, 2012. This Step 1 grievance form reflects that it was signed by the Plaintiff on December 4, 2013, and has a stamped received date of December 10, 2012, with

---

[4]This date appears to be a typographical error, as the other documents and filings in this case show a final agency response date of May 20, 2013. Cf. Court Docket No. 1-1, p. 2; Docket No. 29-2, pp. 3, 5.

[5]The events described in the Complaint occurred while Plaintiff was housed at the Broad River Correctional Institution (BRCI).



a handwritten received date of December 19, 2012. The "action taken" section of this Step 1

grievance shows an action taken date of December 21, 2012, as follows:

> A copy of this grievance has been forwarded to the Division of Investigations for
> possible review due to the allegations made in the grievance. The time frames stated
> for grievances are not applied to grievances sent to the Division of Investigations. At
> some time in the future you will be notified of the decision on this grievance.

A second "action taken", bearing the date May 20, 2013, is then set forth as follows:

> Administratively Closed due to failure to participate in the Grievance Process.

See Exhibit, (Step 1 Grievance Form). See generally, Plaintiff's Complaint.

In support of summary judgment in the case, the Defendant Clifton Davenport has

submitted an affidavit wherein he attests that he is a Correctional Officer at BRCI, and that on

November 28, 2012 he was serving lunch in the Special Management Unit (SMU), where the Plaintiff

was housed. Davenport attests that while he was serving lunch, Plaintiff became disruptive, shouting

"F**k that sh*t! I ain't taking that sh*t today! I am not letting you walk my sh*t today. Give me

another tray!" Davenport further attests that when Plaintiff received his food service tray at the flap,

he threw the tray into the flap and food went all over Davenport's shoes. Plaintiff then placed his

right arm through the flap and stated "F**k you and tray Davenport you b*tch ! I am going to f**k

you up! Quit hiding behind that badge!" Davenport attests that at that point he stepped back and told

Plaintiff to get away from the flap.

Davenport attests that it is important to secure food service flaps in all cells, especially

including the SMU, for reasons of officer safety, and that Plaintiff's food service flap could not be

secured until he removed his arm from the flap. Davenport attests that Plaintiff refused Davenport's

direct instruction to remove his arm from the food service flap, so he [Davenport] utilized one burst



of chemical munitions to the flap area of the cell in order to secure the flap. Davenport attests that Plaintiff then backed away from the flap, and the flap was secured. Davenport further attests that following this incident, Plaintiff was assessed by medical and the determination was made that no treatment was needed. Following this incident, Plaintiff was placed on seventy-two (72) hours controlled cell, placed on alternative meal, and charged with the institutional offense of 809 Threatening Employee.

Davenport attests that he has personal experience serving inmate's the alternative meal referred to as "nutriloaf", which is served wrapped in plastic. Davenport attests that this plastic would prevent an officer from tampering with the nutriloaf in any way. Davenport further attests that inmates placed on controlled cell are never denied a blanket. Davenport attests that all of the force that was directed towards the Plaintiff was in a good faith effort to maintain or restore discipline, and was in direct response to Plaintiff's refusal to obey a direct order to remove his arm from the food service flap so that it could be secured. Davenport attests that he tempered the severity of his forceful response by utilizing only the amount of force necessary to ensure that Plaintiff complied with his directive so that the food service flap could be secured.

Davenport has attached to his affidavit as an exhibit a copy of the Incident Report from this incident as well as the Report on the Use of Force. The Report of the Use of Force form reflects that three grams of gas was used in this incident. See generally, Davenport Affidavit, with attached Exhibits.

The Defendants have also submitted an affidavit from Michael Tindal, who attests that he is an Inmate Grievance Administrator with the Inmate Grievance branch at the SCDC. Tindal attests that he is familiar with Plaintiff's grievance history, and that Plaintiff filed Grievance BRCI-



1500-12 regarding the allegations raised by Plaintiff in his Complaint.  Tindal attests that this grievance is dated December 4, 2012, and that this grievance was ultimately returned to the Plaintiff unprocessed due to Plaintiff's failure to participate in the grievance process.  Specifically, Tindal attests that Plaintiff refused to participate in the grievance process when the inmate grievance administrator attempted to discuss the matter with him.  Tindal further attests that Grievance BRCI-1500-12 was the only grievance filed by the Plaintiff in regard to the November 28, 2012 incident.  Tindal has attached a copy of Plaintiff's Step 1 grievance form to his affidavit,[6] as well as the management system computer printout relating to this grievance, which bears the notation: "returned from [Division of Investigations] 1/16/13 . . . refused to participate in grievance process while IGA attempted to discuss".  See generally, Tindal Affidavit, with attached exhibits.

In his initial response to the Defendants' motion for summary judgment filed June 16, 2016 (captioned as "Motion in Affidavit"), Plaintiff argues that defense counsel has submitted "falsehoods" to the Court and should be sanctioned.  In his second response (which was filed over a month past the deadline for filing his response)[7] Plaintiff submitted a thirty-six (36) page brief (which he captioned as an "Affidavit", although it is not sworn) in which he reiterates the allegations of his Complaint.  As part of this brief, Plaintiff argues that the Defendant Warden Stevenson should be liable for the actions set forth in his Complaint under a respondeat superior theory of liability.[8]  Specifically with respect to his grievance, Plaintiff argues that the Defendants failed to timely respond

---

[6]This is the same grievance form Plaintiff attached as an exhibit to his Complaint.

[7]In light of Plaintiff's pro se status, the undersigned has nevertheless considered this filing in evaluating the merits of the Defendants' motion for summary judgment.

[8]Plaintiff also sets forth "respondeat superior" as being one of his claims for relief in his Complaint.



to his grievance and "thus Defendants are barred from claiming exhaustion". Plaintiff argues that he had an "action due date" for his grievance of January 19, 2013, but that the Defendants did not administratively close his grievance until May 20, 2013, which was one hundred twenty (120) days from the filing of the grievance, and that therefore there is a disputed material fact as to whether his grievance should be deemed as having been exhausted due to the Defendants' failure to timely respond thereto.

Plaintiff has attached as an exhibit to his brief a copy of an SCDC Alternative Meal Service form notifying Plaintiff that he had been placed on alternative meal service back in August of 2012.[9] See generally, Plaintiff's Brief, with attached exhibit.

### Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal

---

[9]One of Plaintiff's complaints is apparently that he failed to receive any such notification form following the incident of November 28, 2012.



construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists.  Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

Here, after careful review and consideration of the arguments and evidence submitted in this case, the undersigned finds for the reasons set forth hereinbelow that the Defendants are entitled to summary judgment in this case.

**I.**

**(Federal Claim)**

Pursuant to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this Title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Through the enactment of this statute, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures."  Booth v. Churner, 532 U.S. 731, 741 (2001); see Porter v. Nussle, 534 U.S. 516 (2002); Larkin v. Galloway, 266 F.3d 718 (7th Cir. 2001) [exhaustion required even though plaintiff claimed he was afraid]; see also Claybrooks v. Newsome, No. 00-7079, 2001 WL 1089548 (4th Cir. Sept. 18, 2001) (unpublished opinion) [applying Booth v. Churner to affirm district court's denial of relief to plaintiff].  Accordingly, before Plaintiff may proceed on his federal claims in this Court, he must first have exhausted the administrative remedies that were available to him at the prison.

Under the SCDC grievance procedure, in order to exhaust a conditions of confinement claim within the SCDC, the inmate must submit a Step 1 grievance form setting out his complaint to the Warden, and if the inmate is unsuccessful at the Step 1 level, he must then appeal by filing a



Step 2 appeal.  Only after an inmate has received a response to his Step 2 appeal is his claim deemed

exhausted.  See SCDC Inmate Grievance System Procedures, GA-01.12 (May12, 2014), Nos. 13.7

through 13.10;[10]  see also Branton v. Ozmint, No 08-2306, 2009 WL 1457144, at * 2 (D.S.C. May

22, 2009); Jones v. Kay, No. 07-3480, 2007 WL 4292416, at * 5 (D.S.C. Dec. 5, 2007); Jenkins v.

South Carolina Dept. of Corrections, No. 05-2800, 2006 WL 1083563, at * 5 (D.S.C. Apr. 18, 2006).

To the extent Plaintiff is also asserting a separate violation of his rights under the Religious Land Use

and Institutionalized Persons Act (RLUIPA), any such claim must also be exhausted.  Cutter v.

Wilkinson, 544 U.S. 709, 723, n. 12 (2005) [Noting that "a prisoner may not sue under RLUIPA

without first exhausting all available administrative remedies"]; cf. Vaughn v. Coble, No. 15-4149,

2015 WL 7352338, at * 3 (D.S.C. Oct. 21, 2015], Report and Recommendation adopted sub nom.

Vaughn v. Officer Michael Coble, 2015 WL 7274078 (D.S.C. Nov. 16, 2016).

The Defendants have the burden of showing that Plaintiff failed to exhaust his

administrative remedies.  See Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 683

(4th Cir. 2005) [inmate's failure to exhaust administrative remedies is an affirmative defense to be

both pled and proven by the Defendant]; Jones v. Bock, 549 U.S. 199 (2007).  To meet this burden,

the Defendants have submitted the sworn affidavit from Michael Tindal as well as exhibits setting

---

[10]Found at www.doc.sc.gov/pubweb/policy/GA-01-12.htm1471298422889.pdf.  The court may take judicial notice of factual information located in postings on government websites. See Hall v. Virginia, 385 F.3d 421, 423 at n. 3 (4th Cir. Sept. 22, 2004) [Taking judicial notice of information publicly available on official government website; Tisdale v. South Carolina Highway Patrol, No. 09-1009, 2009 WL 1491409 at * 1 n. 1 (D.S.C. May 27, 2009), aff'd, 347 Fed. Appx. 965 (4th Cir. Aug. 27, 2009); In re Katrina Canal Breaches Consolidated Litigation, No. 05-4182, 2008 WL 4185869 at * 2 (E.D. La. September 8, 2008) [noting that courts may take judicial notice of governmental websites including other courts' records]; Williams v. Long, No. 07-3459-PWG, 2008 WL 4848362 at *7 (D. Md. November 7, 2008) [noting that some courts have found postings on government websites as inherently authentic or self-authenticating].



forth Plaintiff's grievance history to show that Plaintiff failed to exhaust his administrative remedies

with respect to the claims asserted in this lawsuit prior to filing this lawsuit.  Specifically, the

evidence reflects that Plaintiff filed a Step 1 grievance relating to the matters alleged in his Complaint

on December 4, 2012.  Plaintiff was thereafter notified on December 21, 2012 that, due to the nature

of the claims asserted, the matter was being forwarded to the Division of Investigations for review.

Plaintiff was also advised that the general time frame set forth by SCDC policy for the resolution of

grievances does not apply to grievances sent to the Division of Investigations.  See Exhibit (Step 1

Grievance); see also SCDC Inmate Grievance System Procedures, GA-01.12 (May 12,2014), No. 15;

Jamison v. Wright, No. 11-2578, 2012 WL 3764031 at * 3 (D.S.C. June 29, 2012) [Noting that

grievance is held in abeyance while a criminal investigation of incident is undertaken by SCDC's

Division of Investigations, and that Step 1 grievance may proceed after conclusion of the

investigation], adopted and incorporated by, 2012 WL 3839153 (D.S.C. Aug. 30, 2012].  The Step

1 grievance was subsequently administratively closed and returned to the Plaintiff on May 20, 2013

due to Plaintiff's "failure to participate in the Grievance process".[11]   The SCDC Offender

Management System Computer printout also reflects that Plaintiff "refused to participate in grievance

process while IGA attempted to discuss".  There is no dispute in the evidence and other filings before

this Court that Plaintiff never filed a Step 2 grievance appeal or any other type of appeal of the

dismissal of his Step 1 grievance. See generally, Jordan v. Miami-Dade County, 439 F.Supp.2d 1237,

---

[11]The undersigned notes that Plaintiff, a frequent filer of litigation in this Court, has filed another civil action relating to an incident that allegedly occurred at his prison on November 17, 2012.  Plaintiff also filed a Step 1 grievance with respect to that incident, which was also returned to the Plaintiff on this same date (May 20, 2013) for failure of the Plaintiff to participate in the grievance process on that claim as well. See Brooks v. Davenport, et al., Civil Action No. 9:15-2195; see also Aloe Creme Laboratories, Inc. v. Francine Co., 425 F.2d 1295, 1296 (5th Cir. 1970)[a federal court may take judicial notice of the contents of its own records].



1241-1242 (S.D.Fla. 2006)[Remedies not exhausted where inmate did not appeal denial].

Plaintiff makes two arguments in opposition to this case being dismissed for failure to exhaust administrative remedies.  First, Plaintiff disputes that he failed to cooperate in the investigation of his grievance.  However, even assuming this representation to be true for purposes of summary judgment, that does not save this case from dismissal, as it does not change the fact that Plaintiff failed to appeal the dismissal of his Step 1 grievance.  Indeed, the argument Plaintiff now makes before this Court is the very argument he could (and should) have made in an administrative appeal.  Cf. Blakely v. Tatarsky, No. 08-3609, 2009 WL 2922987 at * 5 (D.S.C. Sept. 1, 2009)["It appears, however, that the plaintiff did nothing after the grievance(s) were returned as either unprocessed or denied. . . . Whether or not the plaintiff now has some legitimate argument as to why his grievances should have been processed is immaterial.  He did not proffer that same argument to the defendants, as far as the Court has been informed.  It cannot be said, in this case, that administrative remedies were simply unavailable to him."]; see also Sullivan v. Coleman, No. 06-1588, 2006 WL 3759757, * 6 (D.S.C. Dec. 18, 2006)[Finding that inmate abandoned grievance where he failed to properly complete and return Step 2 Inmate Grievance Form]; Williams v. Reynolds, No. 12-138, 2013 WL 4522574 at * 4 (D.S.C. Aug. 27, 2013) [Noting that "even if Plaintiff did file a Step 1 grievance there is no evidence that Plaintiff filed a Step 2 grievance or otherwise appealed the decision not to process the Step 1 grievance."].

Plaintiff's second argument is that he should be deemed to have exhausted his administrative remedies because he did not receive a response to his Step 1 grievance until May 20, 2013, which (Plaintiff asserts) was outside of the time deadlines set forth by SCDC policy for the Department to respond to inmate grievances.  See Boyd v. Corrections Corp. of America, 380 F.3d



989, 996 (6ᵗʰ Cir. 2004) [ administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance], cert. denied, 544 U.S. 920 (2005); cf. Jones v. Kay, 2007 WL 4292416, at * 5; see also Hardin v. South Carolina Dept. of Corrections, No. 07-0009, 2007 WL 675632, at * 3 (D.S.C. Feb. 28, 2007).  However, as Plaintiff was clearly advised on December 12, 2012, the normal time for responding to inmate grievances do not apply to grievances that are referred to the Division of Investigations for review.  See also SCDC Inmate Grievance System Procedures, GA-01.12 (May 12, 2014), Nos. 11, 15; Jamison, 2012 WL 3764031 at * 3.  Further, regardless of the time frame involved, there is again no dispute in the evidence that Plaintiff did receive a response to his Step 1 grievance.  Therefore, even assuming that the processing of Plaintiff's Step 1 grievance was untimely (which the undersigned expressly does not find),[12] Plaintiff was still required, upon receipt of the response to his Step 1 grievance, to complete the grievance process before filing a lawsuit.  Cf. Kearse v. Patterson, No. 12-1704, 2013 WL 4511637, at * 3 (D.S.C. Aug. 22, 2013) [Claim subject to dismissal for failure to exhaust where Plaintiff received response to his Step 1 grievance after the expiration of the 114 day time period and then filed a lawsuit without attempting a Step 2 appeal]; Wright v. Turbide, No. 14-2219, 2015 WL 3545362 at ** 1, 3-4 (D.S.C. June 8, 2015)[Finding Defendant met its burden of demonstrating Plaintiff's failure to exhaust where Plaintiff

---

[12]The inmate grievance system policy provides generally (for grievances that have not been referred to the Division of Investigations) for completion of the process within 171 days, although under certain circumstances the grievance process may exceed 261 days.  SCDC Inmate Grievance System Procedures, GA-01.12 (May 12, 2014), No. 11.  Plaintiff received a response to his Step 1 grievance form within these time periods.  While the Court is aware that in previous years the time period for completion of administrative review of prison grievances has been 114 days; Jones, 2007 WL 4292416, at * 5; even if that shorter period was applicable to grievances filed in 2012/2013, that shorter period was also subject to suspension upon referral of a grievance to the Division of Investigations.  See also Jamison, 2012 WL 3764031 at * 3.  Furthermore, this is not a case where Plaintiff filed his action prior to ever receiving a response to his Step 1 grievance.



received a response to his Step One grievance approximately 10 months after it was filed, and rather

than filing the required Step Two grievance form, he waited another 15 months and then filed a court

case].

        Plaintiff cannot receive a response to his Step 1 grievance, fail to pursue an appeal of

the denial of that Step 1 grievance, and then come into this Court two (2) years later claiming a right

to proceed anyway because he allegedly did not (years earlier) timely receive a response to that Step

1 grievance. Cf. Williams, 2013 WL 4522574 at * 4 [Noting that "even if Plaintiff did file a Step 1

grievance there is no evidence that Plaintiff filed a Step 2 grievance or otherwise appealed the

decision not to process the Step 1 grievance."]; see also Spruill v Gillis, 372 F.3d 218, 227-232 (3d

Cir. 2004) [Discussing necessity of pursuing all administrative remedies to the end]; Cannon v.

Washington, 418 F.3d 714, 719 (7th Cir. 2005) [Prisoner may not file a lawsuit before exhausting his

administrative remedies].  Even if Plaintiff believed that any attempt to further appeal the decision

on his Step 1 grievance would have been futile, that does not excuse his failure to complete his

grievance review through the required appeal process before filing this lawsuit. Brown v. Strickland,

No. 15-1251, 2016 WL 4168604 at * 2 (D.S.C. Aug. 8, 2016) (quoting Massay v. Helman, 196 F.3d

727, 733 (7th Cir. 1999) ["[T]here is no futility exception to the PLRA's exhaustion requirement"];

Cox v. Grayer, No. 08-1622, 2010 WL 1286837, at * 7 (N.D.Ga. March 29, 2010)[["[T]here is no

futility exception to [the] exhaustion requirement"].

        Hence, there is no genuine issue of fact as to whether Plaintiff failed to exhaust his

grievance remedies in this case.  Allowing a prisoner to bring an inmate lawsuit without fully

exhausting his administrative remedies prevents prison officials from having the opportunity to

address the prisoner's complaints through the administrative process, thereby undermining Congress'



directive that prisoners are required to do so prior to filing a complaint in federal court. Jones, 549 U.S. at 204 ["Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court"]; see also Jamison, 2012 WL 3764031, at * 3.   Therefore, Plaintiff's federal claims under 42 U.S.C. § 1983 and the RLUIPA are subject to dismissal for failure of the Plaintiff to exhaust his administrative remedies. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000)["It is beyond the power of this court - or any other to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."](quoting Beeson v. Fishkill Corr. Facility, 28 F.Supp. 2d 884, 894-895 (S.D.N.Y. 1998)); Malik v. Sligh, No. 11-1064, 2012 WL 3834850, at * 4 (D.S.C. Sept. 4, 2012) ["A court may not consider, and must dismiss, unexhausted claims"]; Porter, 534 U.S. at 516 [exhaustion required for all actions brought with respect to prison conditions]; Cutter, 544 U.S. at 723, n. 12 [Noting that "a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies"].

## II.

## (State Law Claims)

As noted, Plaintiff also purports to assert several state law causes of action in his Complaint.  However, if the Court dismisses Plaintiff's federal claims, these pendant state law claims should all also be dismissed under United Mine Workers v. Gibbs, 383 U.S. 715 (1966), and its progeny.  See In Re Conklin, 946 F.2d 306, 324 (4th Cir. 1991); Nicol v. Imagematrix, Inc., 767 F.Supp. 744, 746, 749 (E.D.Va. 1991); Mills v. Leath, 709 F.Supp. 671, 675-676 (D.S.C. 1988); Carnegie-Melon v. Cohill, 484 U.S. 343 (1988); Taylor v. Waters, 81 F.3d 429, 437 (4th Cir. 1996).

Gibbs provides that where federal claims in a lawsuit originally filed in a United States



District Court are dismissed, leaving only state law causes of action, dismissal of the remaining state law claims without prejudice is appropriate in order to allow the Plaintiff to pursue and obtain a ruling as to the viability of his or her state law claims in a more appropriate forum. See generally, Gibbs, 383 U.S. at 726 ["Certainly, if the federal claims are dismissed before trial, ... the state claims should be dismissed as well"]; Carnegie–Mellon, 484 U.S. at 350, n. 7 ["[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine ... will point toward declining to exercise jurisdiction over the remaining state law claims."].[13]  Further, if Plaintiff's state law claims were to survive the Defendants' motion for summary judgment, it would be much more appropriate for those claims to be tried by the state courts.  See Lovern v. Edwards, 190 F.3d 648, 655 (4th Cir. 1999) ["[T]he Constitution does not contemplate the federal judiciary deciding issues of state law among non-diverse litigants"].

Finally, dismissal of Plaintiff's state law claims would also not prejudice the Plaintiff, as federal law provides for tolling of statutes of limitation for state claims during the period they were pending in federal court and for thirty days afterwards.  See 28 U.S.C. § 1367(d); Jinks v. Richland County, 538 U.S. 456 (2003); Hedges v. Musco, 204 F.3d 109, 123–124 (3rd Cir. 2000); Beck v. Prupis, 162 F.3d 1090, 1099–1100 (11th Cir.1998) ["a dismissal under section 1367 tolls the statute of limitations on the dismissed claims for 30 days"].  Therefore, Plaintiff would be able to refile his state claims in state court, if he chooses to do so, assuming of course that they were timely asserted initially through the filing of this action.

---

[13]Plaintiff could, of course, maintain his state claims in this court if there was diversity jurisdiction in this case. See 28 U.S.C. § 1332(a). However, all of the parties are alleged to be South Carolina residents. See Court Docket No. 1, p. 2; Court Docket No. 15. Therefore, diversity jurisdiction is not available.



**Conclusion**

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**.

Plaintiff's federal claims should be **dismissed**, without prejudice, for failure of the Plaintiff to exhaust his administrative remedies prior to filing this lawsuit.  Hyde v. South Carolina Dep't of Mental Health, 442 S.E.2d 582, 583 (1994) ["Where an adequate administrative remedy is available to determine a question of fact, one must pursue the administrative remedy or be precluded from seeking relief in the courts"].  Plaintiff's remaining state law claims should then also be **dismissed**, without prejudice, so as to allow Plaintiff to pursue these claims in state court, if he chooses to do so.  See generally, Gibbs, 383 U.S. at 726 ["Certainly, if the federal claims are dismissed before trial, ... the state claims should be dismissed as well"].

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

August 22, 2016
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

